UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER MICHAEL, | |
| Plaintiff, | Case No. 2:22-cv-1865__ |
| v. | |
| FOUNTAIN OF YOUTH ACADEMY OF COSMETOLOGY, LLC D/B/A FOUNTAIN OF YOUTH ACADEMY OF COSMETOLOGY, and CHERI HEROLD, in her individual capacity, | JURY TRIAL DEMANDED |
| Defendants. | |

## **COMPLAINT**

NOW COMES, Plaintiff, Jennifer Michael, by and through her attorney, Christi Wallace, Esq. of MKO Employment Law, and files this Complaint alleging as follows.

### **I. Nature of the Action**

1.      Plaintiff brings this action under 42 U.S.C. § 1981.  Plaintiff was retaliated against for opposing unlawful discrimination.

2.      Plaintiff brings this action under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) et seq.  Plaintiff was retaliated against for opposing unlawful discrimination.

3.      Plaintiff brings this action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.  Plaintiff was retaliated against for opposing unlawful discrimination.

4.      Plaintiff brings a civil RICO cause of action under 18 U.S.C. §1961 et seq.

5.      Plaintiff brings a claim under the PA Whistleblower Act, 43 P.S. § 1423. Plaintiff was terminated for making a good faith report for allegations of waste.

6.      Plaintiff also brings a claim under PA common law for defamation per se.

1

## II. Jurisdiction and Venue

7.     This action arises under the statute cited in the preceding paragraph. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331.

8.     Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## III. Parties

9.     Jennifer Michael ("Plaintiff") is an adult individual with a primary residence located at 115 Gringo Independence Road, Hopewell, PA 15001.

10.     Fountain of Youth Academy of Cosmetology, LLC D/B/A Fountain of Youth Academy of Cosmetology ("FOYA"), is a limited liability company with a business address of 5824 Forbes Ave, Pittsburgh PA 15217.

11.     Cheri Herold ("Ms. Herold"), is an adult individual with a business address of 5824 Forbes Ave, Pittsburgh PA 15217.

## IV. Facts

12.     Plaintiff began working for Defendants on April 18, 2022 as the Operations Manager.

13.     From day one of employment, Plaintiff noticed major "red flags" with how Defendants operated.

14.     Upon hire, Plaintiff was assigned to answer all incoming calls.

   a.  The majority of calls were from students.

   b.  Students called complaining about FOYA, the program, financial aid, and how they were misled by Ms. Herold, the owner of FOYA, among other things.

15. Plaintiff received so many calls regarding the same issues that she became alarmed and confronted Ms. Herold about the students' complaints.

    a. Whenever Plaintiff tried to address the students' concerns with Ms. Herold, she was told things such as, "these students are losers because they couldn't complete the program" or "these students couldn't afford to pay for the program."

16. Plaintiff was new to the Company and trusted Ms. Herold that these were just disgruntled students alleging false allegations against Ms. Herold and FOYA.

17. Between April to July 2022, Plaintiff continued to receive more student complaints about Defendants, alleging the following:

    a. Ms. Herold told the students that financial aid covered tuition, kits, books, etc. needed to complete the program, when in fact it did not, and the students would be left with a balance owed to Defendants.

    b. Ms. Herold would tell students they earned a grant to cover the cost of the program, when in fact they did not, and the students would be left with a balance owed to Defendants.

    c. Ms. Herold would encourage the students to start their program without funding being in place.

    d. Based on Ms. Herold's statements, the students would sign up for the program and commit to paying the cost of the program.

        i. Once the student started the program, they'd be informed their financial aid/funding didn't cover the entire cost of the program, or that their grant "fell through," and they had a balance of roughly $1,000-2,000 owed to Defendants.

      ii.  Ms. Herold would hold the student's school kit hostage until the student paid the balance or got on a payment plan.

      iii.  Ms. Herold would also hold the student's transcripts until the balance was paid in full.

           1.  As a result, students were not able to sit for their Boards to become licensed.

   e.  During that time, Plaintiff was still unable to confirm the truthfulness of these complaints.

   f.  Ms. Herold continued to assure her these were just "disgruntled students."

18.    In or around early July 2022, to Plaintiff's knowledge and belief, Sara Neilson ("Ms. Neilson"), Director of Financial Aid for FOYA, was terminated due to not following a direct order from Ms. Herold to commit potential fraud and manipulate a student's program, contract, start date, and financial aid.

   a.  As a result of Ms. Neilson's termination, Plaintiff was relocated to share an office space with Ms. Herold.

19.    In or around early July 2022, while making conversation, Plaintiff casually asked Ms. Herold how she formed FOYA.

   a.  During this conversation, Plaintiff learned that as part of her business/employment practices, Ms. Herold intentionally targeted low-income African American girls to attend her school.

   b.  Ms. Herold admitted that she specifically researched inner-city, low-income areas and advertised in those areas.

4

     c.   Ms. Herold admitted she targeted these areas because girls from those areas were "stupid," implying she could take advantage of them.

20.     On August 3, 2022, an African American student/girl named Leniyah came into FOYA and met with Ms. Herold, Rebecca Mogielski ("Ms. Mogielski"), Compliance Officer, and Plaintiff to discuss her concerns regarding FOYA and her participation in its program.

     a.   Leniyah had taken a step back from the program due to her concerns about Defendants' operations.

     b.   Ms. Herold immediately shut Leniyah down when she tried to address her concerns about FOYA, the program, and how she was misled by Ms. Herold.

     c.   Ms. Herold focused solely on getting Leniyah back into the program.

     d.   Ms. Herold advised Leniyah that if she went back on the schedule full-time (32/hrs a week), she would graduate by X date.

         i.   To Plaintiff's knowledge and belief, Leniyah executed a new contract stipulating to the new graduation date and schedule.

     e.   During the meeting, Plaintiff realized Ms. Herold intentionally misled Leniyah into resuming the program.

         i.   To Plaintiff's knowledge and belief, Leniyah had X number of hours remaining to complete the program.

       ii.   To Plaintiff's knowledge and belief, there was no possible way for Leniyah to complete her hours by the new graduation date that Ms. Herold proposed, and that Leniyah agreed to.

     iii. To Plaintiff's knowledge and belief, the number of hours that Leniyah needed to complete the program would put her well past the new graduation date she agreed to.

     iv. If Leniyah went past the new graduation date, it would cost her an additional $250 each week.

     v. Ms. Herold concealed that vital piece of information from Leniyah.

     vi. To Plaintiff's knowledge and belief, Leniyah had no knowledge that her resuming the program would cost her thousands of extra dollars.

  f. Ms. Mogielski attended the meeting via telephone.

     i. Upon hearing the new graduation date, Ms. Mogielski tried to correct Ms. Herold.

     ii. Ms. Herold immediately silenced Ms. Mogielski by disconnecting the call.

  g. The meeting ensued with Ms. Herold, Leniyah, and Plaintiff.

  h. Ms. Mogielski began texting Plaintiff voicing her concerns that what Ms. Herold was doing was wrong.

21. When Leniyah left, Plaintiff confronted Ms. Herold about how she misled Leniyah and intentionally set her up for failure.

  a. Plaintiff discussed how she (Ms. Herold) didn't disclose the fact that Leniyah would not be able to complete her hours by the graduation date, and therefore, there would be an extra cost to Leniyah that she would not be able to pay.

  b. Ms. Herold responded, "it's not my job to counsel these girls."

22. Plaintiff could not process what just occurred and stepped outside to compose herself.

23.     Plaintiff reflected on all the student complaints, how Ms. Herold admitted to targeting African American girls, and what she had just witnessed with Leniyah.

24.     Plaintiff believed that what Defendants were doing was illegal and discriminatory.

25.     To Plaintiff's knowledge and belief, Defendants, by and through the creation, enforcement, and implementation of discriminatory and illegal employment/business practices, policies, and procedures, targeted and misled African American girls to become students of FOYA so Defendants could collect federal and state financial aid disbursements, funding, and resources, then intentionally sabotaged them in the completion of their program.

26.     To Plaintiff's knowledge and belief, Defendants targeted (and continue to target) low-income, uneducated, poverty-level African American girls, some of which are pregnant, to become students of FOYA.

     a.   To Plaintiff's knowledge and belief, Defendants target these African American girls because Defendants believed these African American girls were raised to have little expectations in life, were vulnerable, and highly impressionable.

     b.   To Plaintiff's knowledge and belief, Defendants took advantage of their naivety and lured them into FOYA by promising them a bright future if they attended FOYA.

27.     To Plaintiff's knowledge and belief, Defendants, by and through the creation, enforcement, and implementation of discriminatory and illegal employment/business practices, policies, and procedures, intentionally misled (and continue to mislead) African American students/girls to join FOYA so Defendants could collect federal and state financial aid disbursements, funding, and resources.

28.     To Plaintiff's knowledge and belief, from the onset, Defendants set these African American students/girls up for failure.

29.     To Plaintiff's knowledge and belief, Defendants intentionally misled (and continue to mislead) African American students/girls by telling them financial aid would cover tuition, kits, books, etc. needed to complete their program.

   a.  To Plaintiff's knowledge and belief, based on Defendants' misrepresentations, the African American students/girls would sign up for a program and commit to paying the cost of the program.

   b.  To Plaintiff's knowledge and belief, once the African American students/girls started the program, they'd be informed their financial aid/funding didn't cover the entire cost of their program, or that their grant "fell through," and they'd have an account balance of thousands of dollars due to Defendants, which would require the African American students/girls to apply for more financial aid/funding and/or pay out of pocket.

      i.  As a result, the African American students/girls would have to: (1) pay more money to complete their program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

   c.  To Plaintiff's knowledge and belief, Defendants knew these African American students/girls would not qualify for sufficient funding, which meant they'd have an account balance of thousands of dollars due to Defendants, which would require the African American students/girls to apply for more financial aid/funding and/or pay out of pocket.

      i. As a result, the African American students/girls would have to: (1) pay more money to complete the program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

d. To Plaintiff's knowledge and belief, some African American students/girls would pay off their account balance before the completion of the program.

      i. Then, at the completion of their program, Defendants would change the amount owed and would tell the African American students/girls they still owed a balance and would require them to pay even more money before release of their transcripts.

            1. As a result, African American students/girls were not able to sit for their Boards to become licensed to earn money.

e. To Plaintiff's knowledge and belief, Defendants would encourage the African American students/girls to start their program without funding being in place.

f. To Plaintiff's knowledge and belief, Defendants would hold the African American students/girls' kit hostage until their balance was paid in full and/or on a payment plan.

      i. This directly affected the African American students/girls' ability to complete their program.

g. To Plaintiff's knowledge and belief, Defendants would hold the African American students/girls' transcripts until their balance was paid in full.

      i. As a result, African American students/girls were not able to sit for their Boards to become licensed to earn money.

30.     To Plaintiff's knowledge and belief, Defendants did not apply all financial aid/funding received by Defendants to the African American students/girls' balances, and as a result, they'd have an account balance of thousands of dollars due to Defendants, which would require the African American students/girls to apply for more financial aid/funding and/or pay out of pocket.

     a.  As a result, the African American students/girls would have to: (1) pay more money to complete their program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

     b.  To Plaintiff's knowledge and belief, some African American students/girls would pay off their account balance before the completion of the program.

          i.  Then, at the completion of their program, Defendants would change the amount owed and would tell the African American students/girls they still owed a balance and would require them to pay even more money before release of their transcripts.

               1.  As a result, African American students/girls were not able to sit for their Boards to become licensed to earn money.

31.     To Plaintiff's knowledge and belief, Defendants would not refund unused state/federal financial aid to African American students/girls.

32.     To Plaintiff's knowledge and belief, Defendants were applying for financial aid in African American students/girls' names without their consent or knowledge.

33.     To Plaintiff's knowledge and belief, Defendants would contact credit bureaus and report/file complaints against African American students/girls stating their account balances were

delinquent even though the African American students/girls were in the process of paying off their balance and/or had paid off their balance.

    a.  As a result, the African American students/girls' credit would be negatively impacted.

34.    To Plaintiff's knowledge and belief, Defendants created false invoices to receive financial aid disbursements.

    a.  To Plaintiff's knowledge and belief, Defendants charged the African American students/girls' accounts for inventory such as IPads, kits, etc. that were not received by the African American students/girls.

    b.  To Plaintiff's knowledge and belief, Defendants charged the African American students/girls' accounts for inventory such as IPads, kits, etc. that were paid for by the African American students/girls out of pocket.

        i.  For example, some African American students/girls would purchase their kit outside the program and/or pay cash for the kit.

        ii.  As a result, the African American students/girls were being double charged.

35.    To Plaintiff's knowledge and belief, Defendants would intentionally subject these African American students/girls to a stringent schedule to complete their program.

    a.  To Plaintiff's knowledge and belief, Defendants knew these African American students/girls would likely not be able to stick to the stringent schedule to complete the program by their estimated graduation date.

    b.  To Plaintiff's knowledge and belief, Defendants knew these African American students/girls would owe even more money to Defendants by time the program was completed.

      i. As a result, the African American students/girls would have to: (1) pay more money to complete their program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

      ii. To Plaintiff's knowledge and belief, some African American students/girls would pay off their account balance before the completion of the program.

          1. Then, at the completion of their program, Defendants would change the amount owed and would tell the African American students/girls they still owed a balance and would require them to pay even more money before release of their transcripts.

               a. As a result, African American students/girls were not able to sit for their Boards to become licensed to earn money.

36.    To Plaintiff's knowledge and belief, Defendants, by and through the creation, enforcement, and implementation of discriminatory and illegal employment/business practices, policies, and procedures, has/is misusing/abusing state funds/resources, including but not limited to, those derived from the Commonwealth by and through the PA State Grant Program, PA CareerLink, PA Forward Student Loans, and Pennsylvania Office of Vocational Rehabilitation ("OVR").

      a. To Plaintiff's knowledge and belief, Defendants did everything to ensure their stream of financial aid disbursements, funding, and resources continued.

      b. To Plaintiff's knowledge and belief, a program is broken down into stages based on X number of hours being completed.

    i.    To Plaintiff's knowledge and belief, state financial aid disbursements/funding were given to FOYA based a student's completion of hours.

    ii.   To Plaintiff's knowledge and belief, Defendants would falsify grades and add hours to African American students/girls' files to make it appear as if they were progressing in the program to ensure Defendants received more state disbursements/funding.

   iii.   To Plaintiff's knowledge and belief, Defendants added hours to some African American students/girls' files not only to receive more disbursements, funding, and resources, but to also make it appear as if the African American students/girls (no longer in the program) were still active and not considered a drop.

       1.   To Plaintiff's knowledge and belief, if FOYA had too many "drops," the U.S. Department of Education and NACCAS would investigate.

c.   To Plaintiff's knowledge and belief, Defendants created false invoices to receive financial aid disbursements.

    i.    To Plaintiff's knowledge and belief, Defendants charged the African American students/girls' accounts for inventory such as IPads, kits, etc. that were not received by the African American students/girls.

    ii.   To Plaintiff's knowledge and belief, Defendants charged the African American students/girls' accounts for inventory such as IPads, kits, etc. that were paid for by the African American students/girls out of pocket.

1. For example, some African American students/girls would purchase their kit outside the program and/or pay cash for the kit.

2. As a result, the African American students/girls were being double charged.

d. To Plaintiff's knowledge and belief, Defendants were applying for financial aid in African American students/girls' names without their consent or knowledge.

e. To Plaintiff's knowledge and belief, Defendants would not refund unused state/federal financial aid to African American students/girls.

f. To Plaintiff's knowledge and belief, Defendants misled African American students/girls to get them to apply for financial aid/funding.

g. To Plaintiff's knowledge and belief, Defendants did not apply all financial aid/funding received by Defendants to the African American students/girls' balances, and as a result, they'd have an account balance of thousands of dollars due to Defendants, which would require the African American students/girls to apply for more financial aid/funding and/or pay out of pocket.

   i. As a result, the African American students/girls would have to: (1) pay more money to complete their program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

   ii. To Plaintiff's knowledge and belief, some African American students/girls would pay off their account balance before the completion of the program.

      1. Then, at the completion of their program, Defendants would change the amount owed and would tell the African American students/girls

14

they still owed a balance and would require them to pay even more

money before release of their transcripts.

    a.   As a result, African American students/girls were not able to

        sit for their Boards to become licensed to earn money.

37.    To Plaintiff's knowledge and belief, Defendants, by and through the creation,

enforcement, and implementation of discriminatory and illegal employment/business practices,

policies, and procedures, has/is misusing/abusing federal funds/resources, including but not

limited to, Tile IV funds derived from federal programs administered by the U.S. Department of

Education.

    a.   To Plaintiff's knowledge and belief, Defendants did everything to ensure their

        stream of financial aid disbursements, funding, and resources continued.

    b.   To Plaintiff's knowledge and belief, a program is broken down into stages based

        on X number of hours being completed.

        i.   To Plaintiff's knowledge and belief, federal financial aid

           disbursements/funding were given to FOYA based a student's completion

           of hours.

        ii.   To Plaintiff's knowledge and belief, Defendants would falsify grades and

           add hours to some African American students/girls' files to make it appear

           as if they were progressing in the program to ensure Defendants received

           more federal disbursements/funding.

        iii.   To Plaintiff's knowledge and belief, Defendants added hours to some

           African American students/girls' files not only to receive more

           disbursements, funding, and resources, but to also make it appear as if the

African American students/girls (no longer in the program) were still active and not considered a drop.

    1.  To Plaintiff's knowledge and belief, if FOYA had too many "drops," the U.S. Department of Education and NACCAS would investigate.

c.  To Plaintiff's knowledge and belief, Defendants created false invoices to receive financial aid disbursements.

    i.  To Plaintiff's knowledge and belief, Defendants charged the African American students/girls' accounts for inventory such as IPads, kits, etc. that were not received by the African American students/girls.

    ii.  To Plaintiff's knowledge and belief, Defendants charged the African American students/girls' accounts for inventory such as IPads, kits, etc. that were paid for by the African American students/girls out of pocket.

        1.  For example, some African American students/girls would purchase their kit outside the program and/or pay cash for the kit.

        2.  As a result, the African American students/girls were being double charged.

d.  To Plaintiff's knowledge and belief, Defendants were applying for financial aid in African American students/girls' names without their consent or knowledge.

e.  To Plaintiff's knowledge and belief, Defendants would not refund unused state/federal financial aid to African American students/girls.

f.  To Plaintiff's knowledge and belief, Defendants misled African American students/girls to get them to apply for financial aid/funding.

g. To Plaintiff's knowledge and belief, Defendants did not apply all financial aid/funding received by Defendants to the African American students/girls' balances, and as a result, they'd have an account balance of thousands of dollars due to Defendants, which would require the African American students/girls to apply for more financial aid/funding and/or pay out of pocket.

   i. As a result, the African American students/girls would have to: (1) pay more money to complete their program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

   ii. To Plaintiff's knowledge and belief, some African American students/girls would pay off their account balance before the completion of the program.

      1. Then, at the completion of their program, Defendants would change the amount owed and would tell the African American students/girls they still owed a balance and would require them to pay even more money before release of their transcripts.

         a. As a result, African American students/girls were not able to sit for their Boards to become licensed to earn money.

38.    To Plaintiff's knowledge and belief, Defendants, by and through the creation, enforcement, and implementation of discriminatory and illegal employment/business practices, policies, and procedures, sabotaged and interfered with the African American students/girls in the completion of their desired program.

a. To Plaintiff's knowledge and belief, Defendants intentionally misled (continue to mislead) African American students/girls by telling them financial aid would cover tuition, kits, books, etc. needed to complete their program.

b. To Plaintiff's knowledge and belief, once the African American students/girls started the program, they'd be informed their financial aid/funding didn't cover the entire cost of their program, or that their grant "fell through," and they'd have an account balance of thousands of dollars due to Defendants, which would require the African American students/girls to apply for more financial aid/funding and/or pay out of pocket.

    i. As a result, the African American students/girls would have to: (1) pay more money to complete their program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

c. To Plaintiff's knowledge and belief, Defendants knew these African American students/girls would not qualify for sufficient funding, which meant they'd have an account balance of thousands of dollars due to Defendants, which would require the African American students/girls to apply for more financial aid/funding and/or pay out of pocket.

    i. As a result, the African American students/girls would have to: (1) pay more money to complete the program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

    d.  To Plaintiff's knowledge and belief, some African American students/girls would pay off their account balance before the completion of the program.

        i.  Then, at the completion of their program, Defendants would change the amount owed and would tell the African American students/girls they still owed a balance and would require them to pay even more money before release of their transcripts.

            1.  As a result, African American students/girls were not able to sit for their Boards to become licensed to earn money.

    e.  To Plaintiff's knowledge and belief, Defendants would encourage the African American students/girls to start their program without funding being in place.

    f.  To Plaintiff's knowledge and belief, Defendants would hold the African American students/girls' kit hostage until their balance was paid in full or on a payment plan.

        i.  This directly affected the African American students/girls ability to complete their program.

    g.  To Plaintiff's knowledge and belief, Defendants would hold the African American students/girls' transcripts until the balance was paid in full.

        i.  As a result, African American students/girls are not able to sit for their Boards to become licensed to earn money.

    h.  To Plaintiff's knowledge and belief, Defendants did not apply all financial aid/funding received by Defendants to the African American students/girls' balances, and as a result, they'd have an account balance of thousands of dollars due to Defendants, which would require the African American students/girls to apply for more financial aid/funding and/or pay out of pocket.

    i.   As a result, the African American students/girls would have to: (1) pay more money to complete their program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

    ii.   To Plaintiff's knowledge and belief, some African American students/girls would pay off their account balance before the completion of the program.

        1.   Then, at the completion of their program, Defendants would change the amount owed and would tell the African American students/girls they still owed a balance and would require them to pay even more money before release of their transcripts.

            a.   As a result, African American students/girls were not able to sit for their Boards to become licensed to earn money.

i.   To Plaintiff's knowledge and belief, Defendants would not refund unused state/federal financial aid to African American students/girls.

j.   To Plaintiff's knowledge and belief, Defendants were applying for financial aid in African American students/girls' names without their consent or knowledge.

k.   To Plaintiff's knowledge and belief, Defendants would contact credit bureaus and report/file complaints against African American students/girls stating their account balances were delinquent even though the African American students/girls were in the process of paying off their balance and/or had paid off their balance.

    i.   As a result, the African American students/girls' credit would be negatively impacted.

l.  To Plaintiff's knowledge and belief, Ms. Herold created false invoices to receive financial aid disbursements.

    i.  To Plaintiff's knowledge and belief, Defendants charged the African American students/girls' accounts for inventory such as IPads, kits, etc. that were not received by the African American students/girls.

    ii.  To Plaintiff's knowledge and belief, Defendants charged the African American students/girls' accounts for inventory such as IPads, kits, etc. that were paid for by the African American students/girls out of pocket.

        1.  For example, some African American students/girls would purchase their kit outside the program and/or pay cash for the kit.

        2.  As a result, the African American students/girls were being double charged.

m.  To Plaintiff's knowledge and belief, Defendants would falsify grades and add hours to African American students/girls' files to make it appear as if they were progressing in the program.

n.  To Plaintiff's knowledge and belief, Defendants would intentionally subject these African American students/girls to a stringent schedule to complete their program.

    i.  To Plaintiff's knowledge and belief, Defendants knew these African American students/girls would likely not be able to stick to the stringent schedule to complete the program by their estimated graduation date.

    ii.  To Plaintiff's knowledge and belief, Defendants knew these African American students/girls would owe even more money to Defendants by time the program was completed.

1. As a result, the African American students/girls would have to: (1) pay more money to complete their program or (2) drop out of the program because they could not afford to pay leaving them with significant debt without any way to repay it.

iii. To Plaintiff's knowledge and belief, some African American students/girls would pay off their account balance before the completion of the program.

1. Then, at the completion of their program, Defendants would change the amount owed and would tell the African American students/girls they still owed a balance and would require them to pay even more money before release of their transcripts.

a. As a result, African American students/girls were not able to sit for their Boards to become licensed to earn money.

39. To Plaintiff's knowledge and belief, Defendants subjected and forced their employees to assist in and/or carry out Defendants' unlawful and discriminatory conduct and business/employment practices, policies, and procedures.

a. To Plaintiff's knowledge and belief, Defendants forced their employees to specifically advertise in inner-city, low-income, predominately African American areas and target African American girls to become students of FOYA.

b. To Plaintiff's knowledge and belief, Defendants forced their employees to mislead and misrepresent African American students/girls to believe financial aid covered their entire tuition, so they'd sign up for a program.

c. To Plaintiff's knowledge and belief, Defendants forced their employees to sign African American students/girls up for a program knowing the African American

22

students/girls would not qualify for sufficient funding, which meant they'd have an account balance of thousands of dollars due to Defendants, requiring the African American students/girls to apply for more financial aid/funding and/or pay out of pocket.

d. To Plaintiff's knowledge and belief, Defendants forced their employees to encourage the African American students/girls to start their program without funding being in place.

e. To Plaintiff's knowledge and belief, Ms. Defendants forced their employees to sabotage and interfere with the African American students/girls completion of their program by and through unlawful and discriminatory conduct and business/employment practices, policies, and procedures.

f. To Plaintiff's knowledge and belief, Defendants forced their employees to make African American students/girls, who paid off their account balance, to pay even more money before the release of their transcripts.

g. To Plaintiff's knowledge and belief, Defendants forced their employees to not apply all financial aid/funding received by Defendants to the African American students/girls' balances, and as a result, the African American students/girls owed thousands of dollars to Defendants, which would require the African American students/girls to apply for more financial aid/funding or pay out of pocket.

h. To Plaintiff's knowledge and belief, Defendants forced their employees to set a program schedule the African American students/girls would not be able to complete by their estimated graduation date.

i.  To Plaintiff's knowledge and belief, Defendants forced their employees to contact credit bureaus and report/file complaints that the African American students/girls' account balances were delinquent.

j.  To Plaintiff's knowledge and belief, Defendants forced their employees to not refund unused state/federal financial aid to African American students/girls.

k.  To Plaintiff's knowledge and belief, Defendants forced their employees to apply for financial aid in the African American students/girls' names without their consent or knowledge.

l.  To Plaintiff's knowledge and belief, Defendants forced their employees to create false invoices so Defendants could receive financial aid disbursements.

m.  To Plaintiff's knowledge and belief, Defendants forced their employees to hold the African American students/girls' kits hostage until their balance was paid in full and/or on a payment plan.

n.  To Plaintiff's knowledge and belief, Defendants forced their employees to hold the African American students/girls' transcripts until the balance was paid in full.

o.  To Plaintiff's knowledge and belief, Defendants forced their employees to manipulate African American students/girls' files, hours, grades, etc. at the detriment of the African American students/girls.

p.  To Plaintiff's knowledge and belief, Defendants forced their employees to commit acts that misused/abused state and federal funds/resources.

40.   On August 3, 2022, Plaintiff came back inside and confronted Ms. Herold, opposing her unlawful and discriminatory conduct and business/employment practices, policies, and procedures, as well as her abuse/misuse of state/federal funds/resources.

24

    a.   Plaintiff told Ms. Herold that Leniyah is going to owe more money than what was originally quoted to her at the start of the program, and that Leniyah didn't have the extra money.

    b.   Plaintiff once again stated, "you are intentionally setting these students up for failure."

    c.   Ms. Herold once again ignored all the issues and rebuked, "I don't appreciate my business ethics being scrutinized by someone that is new to my business."

41.    The next day, still disturbed by what she witnessed the day before, Plaintiff reached out again to Ms. Herold to discuss her unlawful and discriminatory conduct and business/employment practices, policies, and procedures, and abuse/misuse of state and federal funds/resources.

    a.   Plaintiff brought up that FOYA had no structure, there weren't enough instructors, students were not getting the proper experience, grades and hours were being manipulated, etc. *See supra.*

    b.   Plaintiff then confronted Ms. Herold about how she preys on African American students/girls and then lies to them to obtain federal and state aid funding/resources. *See supra.*

    c.   Plaintiff confronted Ms. Herold about how she sabotages African American students/girls. *See supra.*

    d.   Plaintiff told Ms. Herold that she [Ms. Herold] didn't care about the students and only signed them up so she could receive financial aid disbursements, funding, and resources.

    e.   Ms. Herold told Plaintiff to "stay out of my business."

42.     On October 23, 2022, an African American student/girl named Keinesha came into FOYA and approached Ms. Herold regarding Defendants allegedly forging her Master Promissory Note to obtain financial aid in her name.

    a.  Ms. Herold called Frankie Religa ("Ms. Reglia"), Director of Education for FOYA, and was present by phone for this interaction.

    b.  Plaintiff also witnessed this interaction.

    c.  Ms. Herold admitted to forging Keinesha's Master Promissory Note and stated that they (any administrator at FOYA) were allowed to do it and it is common practice to do so to speed the process along.

    d.  Keinesha was upset and told Ms. Herold and Ms. Reglia it was forgery, identity theft, and fraud.

    e.  Ms. Herold told Keinesha that she agreed to the fraud by continuing to attend FOYA.

    f.  Plaintiff confronted Ms. Herold regarding the forging of financial aid documents, and how it was illegal.

    g.  Ms. Herold responded, "it's not my job to counsel these girls."

43.     Plaintiff repeatedly confronted Ms. Herold regarding her unlawful and discriminatory conduct, and every time she would either ignore Plaintiff, or she'd justify her behavior by calling students "stupid" or losers."

44.     Ms. Herold continued with her unlawful and discriminatory conduct and business/employment practices, policies, and procedures, and abuse/misuse of state and federal funds/resources.

45.     Despite Ms. Herold constantly dismissing her concerns, Plaintiff continued to complain to Ms. Herold, and opposed her unlawful and discriminatory conduct and business/employment practices, policies, and procedures, and abuse/misuse of state and federal funds/resources, hoping one day she would listen.

46.     On November 3, 2022, one of Defendants' African American students/girls, Sherell, confronted Ms. Herold, and Plaintiff witnessed the interaction.

    a.  Ms. Herold had previously told Sherell that she earned a $1,000 grant.

    b.  After she enrolled, Sherell found out she didn't receive the grant and owed $1,000 to Defendants.

    c.  Sherell confronted Ms. Herold about the $1,000 balance on November 3rd.

    d.  Ms. Herold immediately blew up and began ranting stating, "I don't care about you. I don't care what you need."

    e.  Ms. Herold then proceeded to laugh at Sherell.

    f.  Sherell stated, "what is so funny? This is my career/training and you're mishandling everything about it as the owner of the school."

    g.  Ms. Herold responded by screaming, "I'm calling 911."

    h.  Ms. Herold then proceeded to call 911.

    i.  Ms. Herold portrayed Sherell as the "angry black woman" and went so far in her concocted tale that she told the 911 operation Sherell likely had weapons on her.

    j.  To Plaintiff's knowledge and belief, Sherell was 6-7 months pregnant at the time and posed no risk to Ms. Herold.

    k.  Plaintiff interjected herself into the situation telling Ms. Herold she was being unreasonable and involving the police was not necessary.

l. The Police showed up and confirmed that Sherell posed no risk to anyone.

m. After the Police left, Plaintiff confronted Ms. Herold that it was completely unnecessary to involve the Police.

    i. Ms. Herold responded with, "this is just the kind of students we have. They're used to this kind of stuff."

    ii. Ms. Herold prominently displayed her hatred and ignorance towards African Americans by insinuating because Sherell was African American that she was used to being questioned by Police.

    iii. Ms. Herold smugly displayed her opinion that African Americans were beneath her and showed no remorse for how she treated Sherell.

    iv. Ms. Herold saw her conduct as acceptable as 30 minutes later Ms. Herold joked, "what do you think about doing a reality show here?" clearly enjoying the drama she created.

47. Later that day, Ms. Herold sent an email to all FOYA students stating:

I want to clarify something as I am hearing whispers of 'balances' and 'checks not given.' This largely involves the COMBO students.

First: There are no checks given to students in the Esthetican & Nail Tech Combo program. There never has been and likely will never be in the future. A 600 hour program is not considered even one full academic year in the world of Financial Aid and the government. Therefor the award money they give reflects 2/3 rd of what is considered a full academic year (900 hours).  This amount has never even covered the balance of the program.

The program costs to EVERYONE is: $12,812.

In 21-22 the max total awarded for that program was: $10,330.34.

In 22-23 the max total awarded is: $10,864 (it went up).

EVERYONE HAS A BALANCE.

The cost of the program is $12,812.

48.    By Ms. Herold's own admission, the total amount students are awarded in financial aid is approximately $10,000 leaving them with an account balance of approximately $2,000.

   a.   To Plaintiff's knowledge and belief, Ms. Herold tells African American students/girls the entire cost of the program is covered by financial aid.

49.    On November 7, 2022, Sherell and her dad showed up to amicably discuss what happened on November 3rd.

   a.   Ms. Herold became irate upon seeing them enter the premise.

   b.   Plaintiff reiterated to Ms. Herold that what happened on November 3rd was completely unnecessary, and Sherell didn't deserve what happened.

   c.   Plaintiff tried yet again to advocate for these African American students/girls.

   d.   Plaintiff once again raised concerns to Ms. Herold with how she ran the program, targeted these girls, sabotaged them, lied to them, etc., *see supra,* in hopes that Ms. Herold would finally listen and address the Sherell situation with a smidge of professionalism.

   e.   Plaintiff advised Ms. Herold that she needed to "let it go" regarding the Sherell situation.

   f.   Ms. Herold said, "I'm not letting it go" and was going to suspend Sherell.

   g.   Plaintiff implored Ms. Herold to put her ego aside and "let it go," trying to explain it would be a mistake for her to suspend Sherell.

   h.   Ms. Herold was adamant and said she was suspending Sherell.

   i.   Plaintiff said, "Ok, did you notify her [Sherell] of that?"

j.  Plaintiff explained that FOYA protocol is to notify the student in writing that she is suspended.

k.  Ms. Herold completely ignored Plaintiff and said, "I can do what I want. I'm the Owner."

l.  Plaintiff said, "Ok, do what you want."

50.  Later that day around 1PM, Plaintiff observed a heated phone call between Ms. Herold, another student, and the student's mom.

a.  To Plaintiff's knowledge and belief, the student was upset because she was not advised she'd owe extra money after financial aid.

b.  After Ms. Herold got off the phone, she projected her frustration onto Plaintiff and stated that she did not like her undermining her to the students and "not having my back."

c.  Plaintiff ignored Ms. Herold.

d.  Plaintiff didn't blindly agree to follow Ms. Herold in her pursuit of targeting African American girls.

51.  As a result, later that day around 3PM, Ms. Herold immediately retaliated and started making baseless accusations against Plaintiff in that she was a terrible employee and not doing her job.

a.  Plaintiff once again brought up Ms. Herold's unlawful and discriminatory conduct and business/employment practices, policies, and procedures, and abuse/misuse of state and federal funds/resources. *See supra.*

b.   Ms. Herold responded by screaming at Plaintiff, "I don't know why you are here. You're refusing to do your job, you're undermining me to students, and you aren't in my corner. Get out. Just leave."

52.   Plaintiff was terminated on November 7, 2022 for opposing unlawful and discriminatory conduct and business/employment practices, policies, and procedures, and abuse/misuse of state and federal funds/resources.

53.   After Plaintiff was terminated, Plaintiff became aware that Defendants, by and through their lawful agent, were making defamatory statements against her.

a.   Defendants employ the services of FATSTAF, a third-party service, to handle Defendants' financial aid needs.

b.   On or around December 20, 2022, a former student of Defendants, Racquel Miller ("Ms. Miller"), contacted Renee Schultz ("Ms. Schultz"), Owner/Director of FATSTAF.

i.   Ms. Miller had concerns regarding the allegations being made by students that Defendants were committing financial aid fraud.

ii.   In response, Ms. Schultz stated, "I don't know if you know or heard, but Jenny instigated all of this, and it started when she got there."

iii.   *See attached affidavit as Exhibit A.*

## V. Causes of Action

### COUNT I
### Retaliation in Violation of 42 U.S.C. § 1981 against all Defendants

54.   The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

55.  Plaintiff engaged in protected activity on August 3, 2022 when she opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices and procedures, in violation of § 1981, that forced herself, as well as other employees, to discriminate against African American students in violation of their § 1981 rights.

a.  Plaintiff opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures as set forth above in Paragraphs 14, 17, 19-21, 25-35, 38-40 (including all subparts of each Paragraph).

b.  To Plaintiff's knowledge and belief, Ms. Herold created and had final policy-making authority regarding the enforcement and implementation of the unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures, in violation of § 1981, that forced Plaintiff, as well as other employees, to discriminate against African Americans in violation of § 1981.

56.  Plaintiff engaged in protected activity on October 23, 2022 when she opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures, in violation of § 1981, that forced herself, as well as other employees, to discriminate against African American students in violation of their § 1981 rights.

a.  To Plaintiff's knowledge and belief, Ms. Herold created and had final policy-making authority regarding the enforcement and implementation of the unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures, in violation of § 1981 that forced Plaintiff, as well as other employees, to discriminate against African Americans in violation of § 1981.

57.  Plaintiff continued to oppose Defendants' unlawful and racially discriminatory conduct and employment/business practices, policies, and procedures up until she was terminated.

58.     Plaintiff engaged in protected activity on November 7, 2022 when she opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures, in violation of § 1981, that forced herself, as well as other employees, to discriminate against African American students in violation of their § 1981 rights.

      a.   Plaintiff opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures as set forth above in Paragraphs 14, 17, 19-21, 25-35, 38-42, 46-47, 49-50 (including all subparts of each Paragraph).

      b.   To Plaintiff's knowledge and belief, Ms. Herold created and had final policy-making authority regarding the enforcement and implementation of the unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures, in violation of § 1981 that forced Plaintiff, as well as other employees, to discriminate against African Americans in violation of § 1981.

59.     Within minutes of engaging in protected activity, Plaintiff was terminated on November 7th by Ms. Herold.

60.     Plaintiff was terminated in retaliation for engaging in protected activity.

61.     Plaintiff's job was not in danger until she engaged in protected activity.

62.     As a direct result of Defendants' unlawful acts and omissions, Plaintiff suffered damages.

## COUNT II
### Title VI Retaliation against FOYA
### 42 U.S.C. § 2000(d)

63.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

64.     FOYA is a "program or activity" receiving federal financial assistance.

65.     Plaintiff engaged in protected activity on August 3, 2022 when she opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures that forced herself, as well as other employees, to discriminate against African American students in violation of their Title VI rights.

   a.   Plaintiff opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures as set forth above in Paragraphs 14, 17, 19-21, 25-35, 38-40 (including all subparts of each Paragraph).

66.     Plaintiff engaged in protected activity on October 23, 2022 when she opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures that forced herself, as well as other employees, to discriminate against African American students in violation of their Title VI rights.

67.     Plaintiff continued to oppose Defendants' unlawful and racially discriminatory conduct and employment practices, policies, and procedures up until she was terminated.

68.     Plaintiff engaged in protected activity on November 7, 2022 when she opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures that forced herself, as well as other employees, to discriminate against African American students in violation of their Title VI rights.

   a.   Plaintiff opposed Defendants' unlawful and racially discriminatory conduct and employment/business policies, practices, and procedures as set forth above in Paragraphs 14, 17, 19-21, 25-35, 38-42, 46-47, 49-50 (including all subparts of each Paragraph).

69.     Within minutes of engaging in protected activity, Plaintiff was terminated on November 7th.

70.     Plaintiff was terminated in retaliation for engaging in protected activity.

71.     Plaintiff's job was not in danger until she engaged in protected activity.

72.     As a direct result of FOYA's unlawful acts and omissions, Plaintiff suffered damages.

**COUNT III**
**Title IX Retaliation against FOYA**
**20 U.S.C. § 1681(a)**

73.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

74.     FOYA is an "educational program or activity" receiving federal financial assistance.

75.     Plaintiff engaged in protected activity on August 3, 2022 when she opposed Defendants' unlawful and discriminatory conduct and employment/business policies, practices, and procedures that forced herself, as well as other employees, to discriminate against female students in violation of their Title IX rights.

 a. Plaintiff opposed Defendants' unlawful and discriminatory conduct and employment/business policies, practices, and procedures as set forth above in Paragraphs 14, 17, 19-21, 25-35, 38-40 (including all subparts of each Paragraph).

76.     Plaintiff engaged in protected activity on October 23, 2022 when she opposed Defendants' unlawful and discriminatory conduct and employment/business policies, practices, and procedures that forced herself, as well as other employees, to discriminate against female students in violation of their Title IX rights.

77.     Plaintiff continued to oppose Defendants' unlawful and discriminatory conduct and employment practices, policies, and procedures up until she was terminated.

78.     Plaintiff engaged in protected activity on November 7, 2022 when she opposed Defendants' unlawful and discriminatory conduct and employment/business policies, practices, and procedures that forced herself, as well as other employees, to discriminate against female students in violation of their Title IX rights.

   a.   Plaintiff opposed Defendants' unlawful and discriminatory conduct and employment/business policies, practices, and procedures as set forth above in Paragraphs 14, 17, 19-21, 25-35, 38-42, 46-47, 49-50 (including all subparts of each Paragraph).

79.     Within minutes of engaging in protected activity, Plaintiff was terminated on November 7th.

80.     Plaintiff was terminated in retaliation for engaging in protected activity.

81.     Plaintiff's job was not in danger until she engaged in protected activity.

82.     As a direct result of FOYA's unlawful acts and omissions, Plaintiff suffered damages.

## COUNT IV
### Civil RICO against all Defendants
### 18 U.S.C. § 1962(a)

83.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

84.     18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

85.     FOYA at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

86.     Ms. Herold, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

87.     Defendants agreed to and did conduct and participate in the conduct of an enterprise's affairs through a pattern of racketeering activity, pursuant to 18 U.S.C. §1961(1), and for the unlawful purpose of intentionally defrauding students, state and federal agencies, state and federal financial institutions, and state and federal funds/resources.

     a.     Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of fraud over a span of years, including but not limited to, mail fraud, wire fraud, and financial institution fraud under 18 U.S.C. § 1341, 1343, 1344.

88.     The acts listed above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

89.     At all times relevant hereto, Defendants received income derived from a pattern of racketeering activity to use or invest in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

90.     As a direct result of Defendants' unlawful acts and omissions, Plaintiff suffered damages.

## COUNT V
### Civil RICO against all Defendants
### 18 U.S.C. § 1962(b)

91.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

92.     18 U.S.C. § 1962(b) makes it "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. 18 U.S.C. § 1962(b).

93.     FOYA at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

94.     Ms. Herold, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

95.     Defendants agreed to and did conduct and participate in the conduct of an enterprise's affairs through a pattern of racketeering activity, pursuant to 18 U.S.C. §1961(1), and for the unlawful purpose of intentionally defrauding students, state and federal agencies, state and federal financial institutions, and state and federal funds/resources.

    a.  Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of fraud over a span of years, including but not limited to, mail fraud, wire fraud, and financial institution fraud under 18 U.S.C. § 1341, 1343, 1344.

96.     The acts listed above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

97.     Defendants received income derived from a pattern of racketeering activity to acquire and maintain an interest in or control of an enterprise, which is engaged in interstate or foreign commerce, in violation of 18 U.S.C. § 1962(b).

98.     As a direct result of Defendants' unlawful acts and omissions, Plaintiff suffered damages.

### COUNT VI
### Civil RICO against all Defendants
### 18 U.S.C. § 1962(c)

99.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

100.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c).

101.    FOYA at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

102.    Ms. Herold, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

103.    Defendants agreed to and did conduct and participate in the conduct of an enterprise's affairs through a pattern of racketeering activity, pursuant to 18 U.S.C. §1961(1), and for the unlawful purpose of intentionally defrauding students, state and federal agencies, state and federal financial institutions, and state and federal funds/resources.

    a.  Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of fraud over a span of years, including but not limited to, mail

fraud, wire fraud, and financial institution fraud under 18 U.S.C. § 1341, 1343, 1344.

104.   The acts listed above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

105.   The Defendants have directly and indirectly conducted and participated in the affairs of an enterprise through the pattern of racketeering activity described above in violation of 18 U.S.C. § 1962(c).

106.   Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud students, state and federal agencies, state and federal financial institutions, and state and federal funds/resources.

107.   To achieve their common goals, Defendants knowingly and willfully concealed from the public their scheme to defraud students, state and federal agencies, state and federal financial institutions, and state and federal funds/resources.

108.   As a direct result of Defendants' unlawful acts and omissions, Plaintiff suffered damages.

## <u>COUNT VII</u>
### Civil RICO against Defendants
### 18 U.S.C. § 1962(d)

109.   All preceding paragraphs are incorporated by reference as if fully set forth herein.

110.   18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

111.   FOYA at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

112.     Ms. Herold, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

113.     Defendants have knowingly, willfully, and intentionally conspired and agreed to conduct and participate in the affairs of an enterprise through a pattern of racketeering activity (fraud under 18 U.S.C. § 1341, 1343, 1344) to defraud students, state and federal agencies, state and federal financial institutions, and state and federal funds/resources.

114.     Defendants have knowingly, willfully, and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (fraud under 18 U.S.C. § 1341, 1343, 1344) and to use such income or the proceeds of such income in the establishment and operation of an enterprise. 18 U.S.C. § 1962(a).

115.     Defendants have knowingly, willfully, and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (fraud under 18 U.S.C. § 1341, 1343, 1344) and to use such income or the proceeds to acquire and maintain an interest in or control of an enterprise, which is engaged in interstate or foreign commerce. 18 U.S.C. § 1962(b).

116.     Defendants have knowingly, willfully, and intentionally conspired and agreed to conduct and participate in the affairs of an enterprise through the pattern of racketeering and activity (fraud under 18 U.S.C. § 1341, 1343, 1344). 18 U.S.C. § 1962(c).

117.     Defendants knew their actions, as alleged above, were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

118.     Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(a)-(c) in violation of 18 U.S.C. § 1962(d).

119.    As a direct result of Defendants' unlawful acts and omissions, Plaintiff suffered damages.

**COUNT VIII**
**Violation of PA Whistleblower Act against FOYA**
**43 P.S. § 1423**

120.    All preceding paragraphs are incorporated by reference as if fully set forth herein.

121.    43 P.S. § 1423(a) states, "no employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act."

122.    An "employer" is a public body or any of the following which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body: (1)  an individual; (2)  a partnership; (3)  an association; (4) a corporation for profit; or (5)  a corporation not for profit. 43 P.S. § 1422.

123.    Plaintiff is an "employee" under the PA Whistleblower Act. 43 P.S. § 1422.

124.    Defendant, FOYA, is an "employer" under the PA Whistleblower Act. 43 P.S. § 1422.

125.    "Waste" is defined as "an employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." 43 P.S. § 1422.

126.    FOYA, by and through its owner Ms. Herold, committed acts that resulted in a substantial abuse, misuse, destruction and loss of funds/resources, including but not limited to,

those derived from the Commonwealth by and through the PA State Grant Program, PA CareerLink, PA Forward Student Loans, and/or OVR.

127.    A "good faith report" is defined as "a report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 P.S. § 1422.

128.    Plaintiff made a good faith report of waste to Ms. Herold on August 3, 2022.

129.    Plaintiff made a good faith report of waste to Ms. Herold on October 23, 2022 and continued to do so until her final good faith report on November 7, 2022.

130.    Plaintiff made a good faith report of waste to Ms. Herold on November 7, 2022.

131.    Plaintiff made these reports without malice or for personal gain.

   a.    Plaintiff was trying to protect students and the Commonwealth from abuse, misuse, destruction and loss of funds/resources.

   b.    Plaintiff had reasonable cause to believe her allegations were true.

132.    Plaintiff was fired in retaliation for making a good faith report of waste.

133.    As a direct result of FOYA's unlawful acts and omissions, Plaintiff suffered damages.

**COUNT IX**
**Defamation Per Se against all Defendants**

134.    All preceding paragraphs are incorporated by reference as if fully set forth herein.

135.    After Plaintiff was terminated, Plaintiff became aware that Defendants, by and through their lawful agent, were making defamatory statements against her.

136.    On or around December 20, 2022, Ms. Schultz stated, "I don't know if you know or heard, but Jenny instigated all of this, and it started when she got there." *See attached affidavit as Exhibit A.*

137.     Ms. Schultz accused Plaintiff of committing financial aid fraud, which is a criminal activity.

138.     Ms. Schultz accused Plaintiff of being responsible for the wrongdoing/illegal activity occurring at FOYA, as described *supra*, some of which is considered criminal activity.

139.     Ms. Schultz published the statement to Ms. Miller.

140.     Ms. Miller understood that Ms. Schultz was referring to Plaintiff when making the defamatory statement.

141.     Ms. Miller understood that Ms. Schultz was accusing Plaintiff of committing financial aid fraud and other illegal acts.

142.     Ms. Schultz acted as an agent for Defendants when making the defamatory statement.

143.     Ms. Schultz had apparent and actual authority to act on behalf of Defendants.

144.     Plaintiff's reputation was harmed as a result of the defamatory statement.


WHEREFORE, Plaintiff respectfully request that this Court enter judgement in her favor, and against Defendants, and award all damages available at law and in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, pre-judgement and continuing interest, and any other relief that the Court deems necessary and proper.

Respectfully Submitted,

/s/ Christi Wallace, Esq.
PA ID: 313721
**MKO EMPLOYMENT LAW**
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
Direct: (412) 301-2702
c@mkolaw.com